HANSEN *v.* TOWNSHIP OF WAKEFIELD.

HIGHWAYS AND STREETS—BRIDGES—MUNICIPAL CORPORATIONS—VOID
CONTRACT—EXCESSIVE VERDICT.

> In an action by the assignee of a township order given
> to a contractor for the construction of certain bridges,
> and assigned to plaintiff for all money due him "over and
> above such portion thereof as may be necessary for the
> payment of claims for material and labor furnished and
> performed under said contract," where the contract and
> order were invalid, and there was insufficient evidence
> from which the jury could determine the value of services,
> work, and material furnished by the contractor which the
> township received and retained the benefit of and had not
> paid for, a verdict in approximately the amount of the
> order, which under the record is excessive, is reversed.

Error to Gogebic; Driscoll (George O.), J.   Submitted April 9, 1926.   (Docket No. 58.)   Decided July 29, 1927.

Assumpsit by Cornelius Hansen and others, copartners as C. Hansen Lumber Company, against the township of Wakefield for materials furnished.   Judgment for plaintiffs.   Defendant brings error.   Reversed.

*Edward W. Massie,* for appellant.

*William S. Baird,* for appellees.

STEERE, J.   This is a companion case to the cases of *Webb* and *McNicholas* against defendant, handed down herewith, *ante,* 521, in the particular that it relates to highway matters of defendant during the same year and involves like nonfeasance and malfeasance of the same township officers.   The pleadings are analogous and the trial court, as in those cases, only left to the jury the issue of *quantum meruit.*

Bridges, 9 C. J. § 23 (Anno).

Plaintiffs are copartners doing business as the C. Hansen Lumber Company at Bessemer, Michigan, engaged in selling building and construction material. Their claim was primarily against one Reynold L. Erickson who, during the summer of 1921, constructed two bridges over small streams on highways of defendant under an alleged contract.    H. J. Hansen of that firm testified Erickson had dealt with them from time to time prior and subsequent to 1919, carrying with them a current book account, at different times making payments thereon.    Their last settlement with him prior to the one involved here was in 1919.    He thereafter continued to buy material from them on account as before, and in September, 1921, he gave them an assignment of his account against defendant township for construction of those bridges to protect, or apply on, his indebtedness.    On January 5, 1922, he was owing the firm a little over $1,400, after giving him credit for all payments he had made on account. This indebtedness was for material used by Erickson on various jobs.    On that date the township, in acknowledgment of Erickson's assignment, gave plaintiff a township order for $1,360.

Plaintiffs' written evidence consisted of its township order dated January 5, 1922, payable May 1; 1922, to the C. Hansen Lumber Company with interest at 7 per cent., signed by the township supervisor, clerk, and treasurer; an assignment to it from Erickson, dated September 8, 1921, of all money then or thereafter due him under his contract with defendant for construction of two bridges "over and above such portion thereof as may be necessary for the payment of claims for material and labor furnished and performed under said contract," upon which was indorsed, without date, "Accepted by Wakefield Township, Thomaston, Mich.    A. W. Anderson, Clerk;" and a written contract dated July 26, 1921, under

which it is claimed Erickson constructed the bridges. This so-called bridge contract was signed by William J. Weston, supervisor, and A. W. Anderson, clerk, but not signed by Erickson.

The testimony shows Erickson constructed two steel bridges with concrete abutments and floors as the contract provided for. By it they were to be built on a cost-plus basis of 20 per cent., the work was to be done according to plans and specifications in the supervisor's office. They were not produced in evidence or accounted for, and no one was able to testify that it was so done. There was testimony that they seemed to be well constructed, the work was all right, and they had been used ever since. The steel for the bridges was bought and paid for by the township. Their cost is not suggested in the written instrument nor shown by the evidence. Erickson is not shown to have given any bond for faithful performance of the contract.

The highway commissioner of that year was one Emil Nelson, who testified that he was never consulted regarding the building of these bridges before the contract was let, did not know of any advertisements for bids, never signed any warrants or orders, did not know who was the engineer for those bridges, or that the work was ever inspected by any one; he understood Erickson had a contract for building them, but had never talked with him about it nor seen him at work there. The testimony of Township Clerk Anderson was but little more illuminating as to details in relation to the construction of the bridges. He had no knowledge of who prepared the plans, did not think the township employed an engineer at that time, knew nothing about estimates as to concrete, etc., did not think Nelson called for bids on these bridges or was ever notified about them, but bids were advertised for and Erickson was the lowest bidder. When

the record books of the proceedings of the township
of Wakefield were produced and put in evidence, he
said, after examining them as requested, that he could
not find any mention in them of this bridge contract
with Erickson.   He believed some money had been
paid Erickson, but did not remember whether any of
his labor accounts had been paid direct.   As to the
order signed by the supervisor, treasurer, and himself,
he said that when Erickson had completed his con-
tract and "I came to make settlement on that job for
those bridges I made the township order payable to the
Hansen Lumber Company instead of Reynold L. Erick-
son."   The township treasurer admitted a hearsay
knowledge of Erickson building those bridges, identi-
fied township orders issued to Erickson up to and
including January 5, 1922, amounting to $3,594.71,
aside from $60 paid him later and a bill of $643 paid
by the township to the Wakefield Lumber Company
for cement and lumber furnished for those bridges,
but denied any personal knowledge of what they were
for.   It was shown Erickson had left that part of
the country, and his whereabouts was unknown.
Neither party saw fit to produce Supervisor Weston
as a witness.

The trial court held the alleged contract invalid, and
instructed the jury that there could be no recovery
upon the township order to plaintiffs for $1,360, but
told the jury they could take the same into considera-
tion is so far as it might throw any light upon the
questions submitted, and submitted the issue of *quan-*
*tum meruit* to them in part as follows:

"Now, if Erickson performed work and furnished
materials to the defendant township in the building
of the bridges, as claimed by the plaintiffs, and if the
township accepted and received the benefit of such
work and materials, then notwithstanding the fact that
there was originally no contract made pursuant to
the provisions of the statute, the plaintiffs as the

assignees of Erickson would be entitled to recover the reasonable value of the services, work and materials furnished by Erickson. * * * So that if Erickson, under the rule I have just given you, could have recovered any money from the defendant township on account of this bridge construction at the time that this assignment was made, then the plaintiffs can recover that amount now. Now, as to this phase of the case the question will be whether or not Erickson performed work and furnished materials for the building of these bridges. If he did, did the township receive the benefit of such work and materials? If it did, then what is the reasonable value of such work and materials? The plaintiffs, in order to be entitled to recover under this phase of the case, must prove that Erickson did furnish this work or material and that the defendant accepted it and received the benefit of it, and in that case they can recover the value of such work."

The jury rendered a verdict of $1,497.93 for plaintiffs, and judgment for that amount was entered.

Defendant made motion for a new trial, urging amongst other reasons that the verdict was excessive, which was denied. All errors here urged for reversal were saved for review by timely objections, motions, requests, and exceptions.

Prejudicial error is especially urged on admission of plaintiffs' township order of January 5, 1922, for $1,360, which the court instructed the jury could not be taken as the basis for the verdict, but did subsequently instruct them that they could consider it for whatever light it might throw on such questions as were submitted to them. The only question submitted was that of benefits in labor and material furnished the township by Erickson while constructing those bridges. If the jury did not adopt that order as the basis for computing benefits, we are unable to discover what light it threw on the question submitted to them. There is force in the suggestion that the amount of the verdict shows the order to have been

taken as a basis from which the jury computed it. Aside from the order of January 5, 1922, for $1,360, there was an order given plaintiffs April 1, 1922, for $14.25 in payment of material directly purchased from plaintiffs by defendant, which is not questioned. This, added to the order of January 5, 1922, with permissible interest up to the time of the trial, suggestively approximates the amount of the verdict.

In instructing the jury that plaintiffs as Erickson's assignees would be entitled to recover the reasonable value of his services, work and material by which defendant was benefited, the court necessarily meant work and material which defendant had accepted, retained, and not paid for. It undisputedly related to the construction of these bridges. What they actually cost is not shown. Neither is any estimate of their prospective or probable cost shown, nor is it clearly apparent just how much of the material and labor which went into them was paid for by Erickson or defendant.

The settlement made by the township clerk and, as he testified, ratified by the township board, does not show what bills for labor and material in connection with this bridge were paid or unpaid, taken into account or adjusted. The only proof upon that subject is the omnibus statement of the clerk. Nothing appears in relation to it in the township records. It was shown without dispute that at least one bill for $690 for sand and gravel furnished by another party and used in the two bridges had never been paid. The assignment by Erickson to plaintiff of his claim against the township for construction of the bridges particularly provided that it was "over and above such portion thereof as may be necessary for the payment of claims for material and labor furnished and performed under said contract." The case is fraught with uncertainty along those lines, and from a careful examination of this record we are unable to obtain

any definite evidence of items by which the jury might compute to the amount of this verdict the value of services, work, and material furnished by Erickson which defendant received, retained, and enjoyed the benefit of and had not paid therefor.   In any aspect of the case the verdict is, on this record, excessive.

The judgment is therefore reversed, with costs to defendant, and a new trial granted.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, CLARK, and McDONALD, JJ., concurred.   WIEST, J., concurred in the result.